IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JERMAINE GREENE, | : |
| Plaintiff, | : |
| v. | : Civ. No. 17-504-RGA |
| MAJOR BRENNAN, et al., | : |
| Defendants. | : |

Jermaine Greene, James T. Vaughn Correctional Center, Smyrna, Delaware, Pro Se Plaintiff.

**MEMORANDUM OPINION**

October 3, 2017
Wilmington, Delaware

ANDREWS, U.S. District Judge:

Plaintiff Jermaine Greene, an inmate at the James T. Vaughn Correctional Center, Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983.[1] He appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 6). The Court proceeds to review and screen the Complaint (D.I. 1) pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(a).

## BACKGROUND

Plaintiff commenced this action by filed a motion for a preliminary injunction, construed by the Court as a complaint requesting injunctive relief. (D.I. 1). Named defendants include Major Brennan, Deputy Warden Parker, Sgt. Bailey, and the State of Delaware. A supporting memo filed by Plaintiff indicates that his wishes this matter to proceed as a class action. (D.I. 1-1 at p.1).

Plaintiff alleges that he was held hostage by unknown inmates on February 1, 2017 during the hostage crisis at VCC that resulted in the death of a correctional officer. He was trapped in C-Building for several hours and then released with a few other hostages. He was taken by Department of Correction staff to be checked by medical staff and then taken to a secluded area, placed in a visiting enclosure and surrounded by "CERT" (*i.e.*, Correctional Emergency Response Team) members, several staff members, and a lieutenant.

Plaintiff alleges that he was beaten on the order of an unnamed lieutenant for approximately two or three minutes while his hands were secured firmly behind his back by zip ties. (D.I. 1 at p.2). Plaintiff was kicked in the head, ribs, stomach, and his

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988).

shoulders and legs were stomped on. (*Id.*) He was left on the floor in severe pain for five to six hours. In the early morning Plaintiff was taken to VCC's receiving room. There, he was fingerprinted and interviewed by DOC internal affairs, a homicide detective, and a federal agent.

Following the interview, Plaintiff was immediately transferred to VCC's super maximum security housing unit. Plaintiff complains that, contrary to DOC policy, he was not furnished with any form of infraction, notice, and/or hearing regarding his transfer to SHU. Plaintiff alleges that since his transfer to SHU, he has been subjected to an extremely aggressive level of punitive system and restrictions, as follows: he has been "stripped" of all his recreation, privileges and hygienic entitlements; he receives half portions of food and is deprived of commissary food that has resulted in his loss of 18 to 20 pounds; and his personal property (including legal materials) was confiscated and has not been returned.[2] (*See* D.I. 1-1 at p.2). Plaintiff complains that other inmates who were held hostage have received all their property, as well as their recreation and privileges, and have been placed in a higher privilege level of security. He alleges that out of 120 inmates, only 13 to 15 were discriminatorily chosen and placed in punitive segregation.

A March 18, 2017 memo, from the Office of Treatment Services for maximum housing unit #18, advises Plaintiff that the Ad Seg & Max Review Committee reviewed

---

[2]Plaintiff submitted two grievances for the return of his personal property. One in February 2017, and the other in April 2017 complaining that there had been no decision on the first grievance. (D.I. 1 at pp.5-7). The response to the second grievance stated, "The property within C bldg., deemed salvageable and clearly identifiable, has been returned to its rightful owner. Grievances related to this matter will no longer be accepted." (D.I. 1 at pp.8-9).

2

his status, effective February 23, 2017. (D.I. 1 at p.10). He was made a privilege level 1, and his housing recommendation is 18. (*Id.*). Privilege level 1 allows for one phone call per month, one visit per month, and bi-weekly commissary visits with a limit of $10 for hygiene/writing items only. (*Id.*). Those who are not in punitive segregation are allowed to spend $35 or $45 at the commissary and this allows them to buy food, clothing and all types of hygiene products. Plaintiff alleges that he is being punished because he is subjected to a progressive disciplinary quality of life system that is reserved for disciplinary inmates or inmates who have violated an institutional rule.[3] (D.I. 1-1 at p.1). Plaintiff acknowledges that he was placed in the QOL system following the hostage crisis. (*Id.*) He alleges that Defendants have neither asserted, nor shown, any security needs for the unequal privileges or any lack of available resources that provide a regulatory justification for their conduct. (*Id.* at p.2).

Plaintiff alleges that: (1) Parker (at the time the acting VCC warden) is responsible for policy, rules, and regulations that govern all segregation; (2) Bailey, the sergeant of the property room, is responsible for delivering inmates their personal property; and (3) all Defendants have the responsibility to treat Plaintiff equally to all other inmates. Plaintiff seeks injunctive relief for Defendants to return his personal property and treat him equally to other similarly situated inmates from C-Building.

## SCREENING OF COMPLAINT

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary

---

[3]QOL reviews are initiated approximately every 90 days. (D.I. 1 at p.10).

relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 U.S. at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a complaint or claims for failure to state a claim

4

upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the Court must grant Plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, __U.S.__, 135 S.Ct. 346, 347 (2014). A complaint may not dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

A court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotations omitted). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## DISCUSSION

**Eleventh Amendment**

It is not clear, but it appears that Plaintiff names the State of Delaware as a defendant. However, claims against the State of Delaware are barred by its Eleventh Amendment immunity. *See MCI Telecom. Corp. v. Bell Atl. of Pa.*, 271 F.3d 491, 503 (3d Cir. 2001). The Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974).

The State has not waived its immunity from suit in federal court and, although Congress can abrogate a state's sovereign immunity, it did not do so through the enactment of 42 U.S.C. § 1983. *Brooks-McCollum v. Delaware*, 213 F. App'x 92, 94 (3d Cir. 2007) (citations omitted). Moreover, there is no mention of the State other than to name it in the caption of Plaintiff's supporting memorandum. (D.I. 1-1 at p.1). Plaintiff's claim against the State has no arguable basis in law or in fact and, therefore, will be dismissed as it is immune from suit pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

**Excessive Force**

Plaintiff alleges that, "on order" of an unnamed lieutenant, he was beaten while his hands were secured behind his back and left on the floor in severe pain for five to six hours. The Eighth Amendment prohibits cruel and unusual punishment, which includes the unnecessary and wanton infliction of pain by prison officials. U.S. Const. Ament. VIII; *see also Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Whitley v.*

*Albers*, 475 U.S. 312, 319 (1986). The Eighth Amendment both restrains prison officials from applying excessive force against inmates, *see Hudson v. McMillian*, 503 U.S. 1, 5 (1992), and imposes affirmative duties on prison officials to provide humane conditions of confinement, *see Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). When a prisoner alleges that prison officers used excessive force against the prisoner, the "core inquiry" is not whether a certain amount of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *See Wilkins v. Gaddy*, 559 U.S. 34, 39-40 (2010).

Plaintiff's allegations suffice to state an excessive force claim. However, they are not directed to any of the named defendants. Therefore, the Court will dismiss the excessive force claim for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). Plaintiff will be given leave to amend the claim.

**SHU/Due Process**

Plaintiff alleges Defendants violated his right to due process following the February 2017 hostage incident when he was transferred to "super maximum" SHU in contravention of DOC policies and is now housed in conditions that are an extremely aggressive level of a punitive restrictive system. To succeed on a due process claim, Plaintiff must first demonstrate that he was deprived of a liberty interest. *Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002). The Due Process Clause does not subject an inmate's treatment by prison authorities to judicial oversight as long as the degree of confinement or conditions to which the inmate is subjected are within the sentence

imposed and do not otherwise violate the Constitution. *Id.* (citing *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). Because segregation at a different administrative security level is the sort of confinement that Plaintiff should reasonably anticipate receiving at some point in his incarceration, his transfer to less amenable and more restrictive custody does not implicate a liberty interest that arises under the Due Process Clause. *See Fountain v. Vaughn*, 679 F. App'x 117, 120 (3d Cir. 2017) (citing *Torres v. Fauver*, 292 F.3d 141, 150 (3d Cir. 2002)).

State created liberty interests protected by the Due Process Clause are determined by focusing on the nature of the deprivation. *Sandin v. Conner*, 515 U.S. 472, 481-84 (1995). Liberty interests created by state law are generally limited to restraints on prisoners that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin*, 515 U.S. at 484). In deciding whether a protected liberty interest exists, a federal court must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. *See Mitchell v. Horn*, 318 F.3d 523, 532 (3d Cir. 2003) (citing *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)).

Most of Plaintiff's complaints regarding his conditions in SHU are not atypical. However, one of his complaints gives the Court pause. Plaintiff alleges that he is receiving decreased portions of food as a form of punishment and, so little food, that he has lost 18 to 20 pounds since his placement there. A plaintiff must assert a "dramatic departure" from the standard conditions of confinement before due process concerns are implicated. *Sandin*, 585 U.S. at 485-86. Liberally construing the complaint, the

8

decreased food portions, coupled with significant weight loss, while housed in SHU suffice to allege an atypical or a significant hardship that would deprive Plaintiff of a state-created liberty interest in violation of his right to due process. Therefore, Plaintiff may proceed on the due process claim raised against Parker.

**Equal Protection**

Plaintiff was housed in C-Building at the time of the February 2017 hostage incident. Following the incident, he was transferred to SHU 18 along with 15 to 18 other inmates. Plaintiff alleges that Defendants violated his right to Equal Protection under the Fourteenth Amendment because he is being treated differently from other similarly situated inmates who were housed in C-Building.

To state a claim under the Equal Protection Clause, a prisoner must allege that he was treated differently from similarly situated inmates. *Saunders v. Horn,* 959 F. Supp. 689, 696 (E.D. Pa. 1996); *see also City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985) (noting that the Equal Protection clause "is essentially a direction that all persons similarly situated should be treated alike"); *Price v. Cohen,* 715 F.2d 87, 91 (3d Cir.1983) ("To establish a violation of the equal protection clause, a plaintiff must show that [an] allegedly offensive categorization invidiously discriminates against [a] disfavored group."). Plaintiff is no longer housed in C-Building. Instead, Plaintiff is now housed in SHU-18 with a privilege level of 1. He does not allege Defendants treat him differently from other inmates in the same housing unit with the same privilege level; that is, those to whom he is similarly situated.

Plaintiff has not alleged an Equal Protection violation and, from the facts, it does not appear that he could cure the deficiency through amendment. *See Saunders,* 959

F. Supp. at 696 (finding that prisoner had not stated an equal protection claim where he did not state that he was treated differently from other inmates with similar health problems). Nevertheless, while the Court will dismiss the equal protection claims for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), the Court will grant leave to amend.

**Legal and Personal Property**

Plaintiffs complains that his personal property and legal materials were confiscated and have not yet been returned. The Complaint refers to Bailey as the sergeant of the property room and contains a returned unprocessed grievance from Brennan regarding the return of Plaintiff's property. (D.I. 1 at pp.3, 8).

With regard to Plaintiff's legal documents, prisoners must be allowed "adequate, effective and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977) (holding that prisons must give inmates access to law libraries or direct legal assistance). "Many courts have found a cause of action for violation of the right of access stated where it was alleged that prison officials confiscated and/or destroyed legal materials." *Zilich v. Lucht*, 981 F.2d 694, 695 (3d Cir. 1992) (citations omitted). However, a violation of the First Amendment right of access to the courts is only established where a litigant shows that he was actually injured by the alleged denial of access. The actual injury requirement is a constitutional prerequisite to suit. *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (explaining that the constitutional right of access is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court"). An

actual injury is shown only where a nonfrivolous, arguable claim is lost. *Christopher,* 536 U.S. at 415. Here, there are no allegations of an actual injury.

With regard to Plaintiff's personal property, a due process claim based on the deprivation of his personal property is not actionable under § 1983 unless there is no adequate post-deprivation remedy available. *See Parratt v. Taylor,* 451 U.S. 527, 542 (1981), *overruled on other grounds,* 474 U.S. 327 (1986)); *Harris v. McMullen,* 609 F. App'x 704, 705 (3d Cir. 2015). Because Delaware provides an adequate remedy by filing a common law claim for conversion of property, Plaintiff cannot maintain a cause of action pursuant to § 1983. *Harris,* 609 F. App'x at 705.

For these reasons, the Court will dismiss as frivolous Plaintiff's personal property and legal property claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

**E-Filing Program**

On June 12, 2017, the Clerk's Office received via regular mail, and not through the VCC law library's e-mail/e-filing system, Plaintiff's application to proceed *in forma pauperis* and a copy of his inmate trust account statement. (D.I. 4, 5.) The VCC participates in an e-filing pilot program with the court, and inmate participation is mandatory. *See* September 8, 2016 Standing Order, *In re: Pilot Program for E-Filing Documents in the District of Delaware by Inmates at the James T. Vaughn Correctional Center;* August 28, 2017 Standing Order extending the program. Plaintiff is directed to file future pleadings using the Court's and the VCC's e-filing program procedures.

### CONCLUSION

For the above reasons, the Court will dismiss: (1) the State of Delaware as it is immune from suit; (2) the excessive force claim for failure to state a claim upon which

relief may be granted, with leave to amend; (3) the legal and personal property claims raised against Brennan and Bailey as frivolous; and (4) the equal protection claim as frivolous, all pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i), (ii, and (iii) and 1915A(b)(1) and (2). Plaintiff will be allowed to proceed with the due process claim against Parker. The Court will address the issue of class certification upon the filing of a properly supported motion.

      An appropriate order will be entered.